UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELLMUTH, OBATA & KASSABAUM, L.P., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2945 |
| | § | |
| EFFICIENCY ENERGY, L.L.C. *and* | § | |
| WILLIAM VOLKER | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants William Volker and Efficiency Energy, L.L.C.'s ("EE") motion to dismiss plaintiff Hellmuth, Obata and Kassabaum, L.P.'s ("Hellmuth") petition. Dkt. 7.  The petition was originally filed in Harris County, Texas, and was removed by defendants to this court in October 2014.  Dkt. 1.  Defendants move for dismissal on the basis that plaintiff has failed to join a required party under Federal Rule of Civil Procedure 19, and in the alternative, that plaintiff has failed to state a claim upon which relief can be granted.  After considering the motion, the responses, and the applicable law, the court is of the opinion that the motion should be GRANTED IN PART & DENIED IN PART.

**I. BACKGROUND**

Hellmuth is a design, architecture, engineering and planning firm that does work, such as designing buildings, for a variety of clients, including the University of Texas ("UT").  Dkt. 3 at 2. This case is based on two specific contracts that Hellmuth had with UT.  *Id.* at 11.  The first was for Hellmuth to provide architecture and engineering services for the design of the Dell Pediatric Research Institute.  *Id.*  The second was to provide architecture and engineering services for the design of the Science and Engineering Core Facilities Upgrade at the UT El Paso campus.  *Id.*

The claims in this case center around tax incentives that Congress created in the Energy Policy Act of 2005 to incentivize including energy efficiency features into the design of new and revamped buildings. *Id.* at 9. The incentive relevant to this case is a tax deduction that is available to eligible designers who incorporate energy efficient designs into government-owned buildings. *Id.*; *see* I.R.C. § 179D (in case of an energy efficient commercial building installed on government property, a regulation shall be created to "allow the allocation of the [tax] deduction to the person primarily responsible for designing the property in lieu of the owner of such property."). Hellmuth explains that after eligible designers complete energy efficiency work on a government building, they can apply to the building owner to allocate the tax deduction to the designer. Dkt. 3 at 10. According to Hellmuth, if there is more than one eligible designer who has applied for the tax deduction, the government entity can decide which designer should receive the deduction or divide the deduction amongst the eligible designers. *Id.*; *see* I.R.S. Notice 2008-40, 2008-1 C.B. 725, Section 3 (granting the building owner "discretion to allocate the [tax] deduction among several designers," "[i]f more than one designer is responsible" for the energy efficiency improvements."). Finally, Hellmuth asserts that under Texas law, a Texas governmental entity cannot deny an eligible designer a portion of the federal tax deduction if authorized under the Energy Policy Act of 2005. Dkt. 3 at 10; *see* Tex. Gov't Code Ann. § 447.004(b-3) ("A governmental entity may not disallow the allocation of federal deductions to eligible design professionals authorized by the Energy Policy Act of 2005.").

In the performance of the two contracts Hellmuth had with UT, Hellmuth asserts that its designs met the energy efficiency requirements laid out by Congress, which allowed Hellmuth to apply for a federal tax deduction. Dkt. 3 at 11. Hellmuth makes the uncontroverted assertion that

it submitted the appropriate paperwork and certifications to UT to receive a tax allocation for both projects. *Id.*

Hellmuth asserts that EE represented to UT that it was a business specializing in coordinating financial incentives that are available with the design and implementation of energy efficient building systems. *Id.* at 12. And, at the time Hellmuth applied to UT for authorization to claim a tax deduction for the two contracts it performed, Mr. Volker, as a representative of EE, was working on behalf of UT to manage the tax deduction allocations. *Id.* at 12. Hellmuth alleges that EE falsely represented to UT that UT had the right to require payments in the form of "rebates" or "discounts" from eligible designers before allocating the designers' tax deductions.

Though described in various ways, it appears that Hellmuth next claims that once EE began working on behalf of UT to manage its tax incentive program, EE began requiring eligible designers to sign an agreement to pay EE (not UT) a fee before EE will release the tax deduction from UT to the eligible designer. *Id.* at 12–13. The amount of the fee is allegedly a percentage of the tax deduction that is allocated to the designers. *Id.* Hellmuth disagrees with having to pay a fee to EE in order to receive its tax deduction, and claims that it was harmed by being denied and prevented from receiving the full tax incentives and benefits to which it would otherwise be entitled. *Id.* at 13. Hellmuth seeks damages from EE and an injunction to stop EE from requiring these fees. *Id.* at

Hellmuth brings five causes of action: 1) Fraud; 2) Breach of Fiduciary Duty; 3) Conversion; 4) Business Disparagement; and 5) Tortious Interference with Contract. EE moves to dismiss Hellmuth's complaint for failure to join a required party under Federal Rule of Civil Procedure 12(b)(7) because, they argue, UT is a required party and has not been joined. Dkt. 7 at 1. Alternatively, EE asserts that Hellmuth's claims should be dismissed under Federal Rule of Civil

3

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, including for failure to properly plead fraud with particularity. *Id.* Hellmuth has responded to the motions.

## II. LAW & ANALYSIS

### *A. Joinder*

A court may dismiss a case under Federal Rules of Civil Procedure Rule 12(b)(7) for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). *"*Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex rel. Mississippi v. City of Memphis,, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). "First, Rule 19(a) provides a framework for deciding whether a given person should be joined." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1985). "Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." *Id.* If adding the necessary party would destroy the court's subject matter jurisdiction, for example, joinder would not be feasible. *Hood*, 570 F.3d at 629. The entire inquiry under Rule 19 is a highly-practical and fact-based endeavor. *Id.* at 628.

### *1. Rule 19(a)(1)*

Defendants assert that a required party, UT, is missing from plaintiff's lawsuit. Therefore, the court must first apply Federal Rule of Civil Procedure Rule 19(a)(1) to determine if UT is a required party. *Id.* Rule 19(a)(1) states that

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"[T]he party advocating joinder has the initial burden [to demonstrate] that the missing party is necessary." *Id.*; *Pulitzer*, 784 F.2d at 1309. This burden is met if "an initial appraisal of the facts indicates that a possibly necessary party is absent." *Hood*, 570 F.3d at 628; *Pulitzer*, 784 F.2d at 1309. At that point, "the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Id.*

*2. Rule 19(b)*

Once a party is considered necessary under Rule 19(a)(1), if the party cannot feasibly be joined "the court must consider whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

> The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by:(A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* These four factors "may be delineated as the interests that affect four categories of persons:" 1) the plaintiff's interest in a federal forum; 2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another; 3) the absentee's interest in avoiding prejudice from the proceeding; and 4) the court and public's interest in complete, consistent, and efficient settlement of controversies. *Pulitzer*, 784 F.2d at 1312 (citing *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S. Ct. 733 (1968)).

### B. Failure to State a Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*,

5

699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679. Because "a Rule 12(b)(6) motion is viewed with disfavor and rarely granted, a complaint may not be dismissed unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (emphasis added) (internal quotations omitted).

Additionally, Federal Rule of Civil Procedure Rule 9(b) applies to fraud-related claims. *See Landing Council of Co-Owners v. Fed. Ins. Co.*, No. H-12-2760, 2013 WL 530315, at *3–4 (S.D. Tex. Feb. 11 (2013) (Miller, J.). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (internal quotations omitted).

## II. ANALYSIS

### A. Is UT a Required Party?

There are two alternative ways that a party can be considered "required" under Rule 19(a)(1), which the court considers below.

#### 1. Is complete relief possible among the existing parties without UT?

Based on the court's understanding of the claims, Hellmuth seeks 1) various money damages from EE and Volker, and 2) an order that EE release the tax deduction allocations made by UT without requiring Hellmuth or other eligible designers to pay EE a fee. *See* Dkts. 3 at 7–10; 12 at 3. EE asserts that complete relief is not possible among the existing parties because only UT has the legal authority to allocate the deduction. Dkt. 7 at 3. Hellmuth agrees with EE's proposition that only UT has the authority to allocate the tax deduction, but asserts that EE misses the relevant question. Dkt. 12 at 3. According to Hellmuth, the relevant question is whether EE can require payment in exchange for releasing Hellmuth's already-earned tax deduction allocation, which does not impact UT's ability to determine which designers are eligible for a tax deduction or how a tax deduction should be allocated amongst eligible designers. *Id.*

Based on the briefing before the court, the crux of the complaint is that Hellmuth wants relief from a very specific activity: EE requiring Hellmuth to pay it a fee before it will release Hellmuth's tax deduction. Conceptually, the facts alleged portray EE as a gatekeeper between UT and Hellmuth, with EE holding hostage the tax deduction that has already been allocated to Hellmuth until Hellmuth pays a fee. This concern does not relate to whether Hellmuth is eligible to receive a tax deduction or what percentage allocation of the tax benefit it receives, it appears only to relate to EE keeping the already-earned and allocated tax deduction from Hellmuth. Put another way, if the court prohibits EE from requiring a fee before releasing an eligible party's tax benefit, that is a separate

7

function from UT–or UT's agent–determining whether a party is eligible or how much of a tax benefit should be apportioned to Hellmuth as compared to other eligible parties.[1] Of course, the relief Hellmuth could receive against EE and Volker based on the facts plead, if any, would be very limited to the specific actions of EE and would not enjoin UT from anything or otherwise involve UT at all.

While the burden for EE is light—it must merely show that the facts indicate that UT is a "possibly necessary" party—it has not met this burden. *Hood*, 570 F.3d at 628. Hellmuth complains of an activity conducted by EE, not UT. Even if EE had met it burden, Hellmuth has disputed that UT is a required party and has persuaded the court that UT is not a required party for Hellmuth to seek damages from EE and stop EE's conduct. Though this is narrow relief, plaintiff is master of his complaint.

*2. Does UT claim an interest relating to the action that impairs its ability to protect the interest or puts EE at risk?*

EE asserts that UT has a legally protected interest in its ability to act with discretion, as provided by federal tax law, when determining the manner in which it allocates the relevant tax benefits, and the manner in which it requires compensation for allocating the tax benefit. Dkt. 7 at 3. EE also asserts that proceeding with this suit without UT will impair and impede both defendants' and UT's ability to protect its interest in this suit, and EE and UT could be subject to the risk of incurring double, multiple, or inconsistent obligations from claims for the deductions by other designers and engineers. Hellmuth responds that while UT does have discretion over how much of a tax deduction is allocated amongst eligible designers, UT does not have discretion over whether

---

[1] Though not argued, the court notes that a principal is not a required party to litigation against its agent simply because of the principal-agent relationship. *Nottingham v. Gen. Am. Comms. Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (Rule 19 does "not require joinder of principal and agent.").

to require compensation from designers in exchange for receiving the tax benefits, and therefore cannot claim an interest in this activity. Dkt. 12 at 4.

The parties already agree that UT has discretion to assess who is an eligible party and how the tax benefit should be apportioned amongst the eligible parties. But, as considered above, these interests do not go to the crux of the issue of whether EE can require payment before releasing the tax benefit. Instead, the court focuses on whether EE has established that UT claims an interest in requiring compensation for allocating the tax benefit.

The language of Rule 19(a)(1)(B) requires that UT claim the interest that will allegedly be impacted. Fed. R. Civ. P. 19(a)(1)(B). While it is clear that both parties assert that UT hired EE to manage its tax benefit allocation process, nowhere does either party assert that UT claims that it has a legally protected interest to require fees before releasing a tax deduction. Further, EE has not shown that there is a law that grants UT such an interest in lieu of UT claiming such an interest. Though EE argues that the tax code and guidance documents support its assertion that UT holds such an interest, it points to no specific language in the tax code or other legal authority that creates such an interest for UT. In sum, EE has not shown that UT claims an interest under Rule 19(a)(1)(B) that moving forward with this suit would impair. To be clear, the court is not ruling on whether UT has such discretion to require compensation, it is simply pointing out that EE has not established that UT claims such an interest or that such an interest exists as a legal right for purposes of EE's arguments under Rule 19(a)(1)(B). Therefore, the court need not determine whether Hellmuth's claims related to this alleged interest will impede UT's ability to protect the interest under Rule 19(a)(1)(B)(i); or subject EE to a risk under Rule 19(a)(1)(B)(ii).

Even if the court had continued with the analysis, defendants have not asserted any facts about how the lawsuit would impede the supposed interest, nor how the lawsuit would subject EE

9

to the various risks outlined in the statute. Instead, EE simply restates the statutory language in a conclusory fashion. Dkt. 7 at 3. Absent such explanation, the court cannot see on the face of the petition how UT's absence will create such harms, and EE's conclusions are insufficient to establish that Rule 19(a)(1)(B) applies.

For the foregoing reasons, EE has not established that UT is a required party to this suit. Therefore, the court need not continue the inquiry on to Rule 19(b). Defendants' motion to dismiss on the basis of Federal Rule of Civil Procedure Rule (12)(b)(7) is DENIED.

### *B. Has Hellmuth Stated a Claim Upon Which Relief Can Be Granted?*

Hellmuth brings five causes of action: 1) Fraud; 2) Breach of Fiduciary Duty; 3) Conversion; 4) Business Disparagement; and 5) Tortious Interference with Contract. EE asserts that they should all be dismissed for not stating factual allegations showing that the right to relief is plausible, and that the fraud claim was not pled with particularity. Dkt. 7 at 4–5. EE goes on to argue that the factual allegations that were plead to do not show a right to relief that is plausible. *Id*. at 5. For example, EE explains, Hellmuth claims defendants falsely represented to UT that there was no prohibition against UT requesting compensation in exchange for allocating the deduction. *Id*. According to EE, even if the court assumes the statement was not accurate, no relief may be granted because incorrect advice is a statement of opinion and not a factual misrepresentation. *Id.*

*1. Fraud*

The elements of fraud include: (1) a material representation; (2) that was false; (3) the speaker knew the representation was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby

suffered injury. *In re First Merit Bank*, N.A., 52 S.W.3d 749, 758 (Tex. 2001). And, a claim for fraud must be plead with particularity. *Herrmann Holdings*, 302 F.3d at 564–65.

Hellmuth's fraud claim is based on allegations that Mr. Volker made material misrepresentations of fact to UT, which UT relied on, and which caused Hellmuth damage. Dkt. 3 at 13. EE moves to dismiss on the basis that these claims were not plead with particularity, and the statements made were merely opinions which are not actionable under a fraud claim. Dkt. 7 at 5.

The court need not even consider the parties' arguments about whether the statements were actually false or if they can be considered opinions, because Hellmuth has not pled facts sufficient to satisfy other elements of the claim. Hellmuth never asserts that EE made false statements to Hellmuth, or that Hellmuth relied on EE's allegedly false statements. Instead, Hellmuth pleads that the statements it complains of were made to UT. Hellmuth further pleads that UT is the one who relied on the statements. Hellmuth simply has not pled facts that *Hellmuth* was defrauded by EE. Accordingly, this claim is DISMISSED.

*2. Breach of Fiduciary Duty*

"The elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in injury to the plaintiff or benefit to the defendant." *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 650 (Tex. App. 2013). The first step in assessing such a claim is determining whether the defendant owes the plaintiff a fiduciary duty. "When the underlying facts are undisputed, determining whether a fiduciary duty existed is a question of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

"In certain formal relationships, such as attorney-client, partnership, or trustee relationships, a fiduciary duty arises as a matter of law." *Id.* An informal fiduciary duty may arise from moral, social, domestic or personal relationships where one person trusts in and relies on another. *Id.* at 331. However, not every relationship involving a high degree of trust and confidence creates a fiduciary duty. The general rule is that a contractual obligation does not give rise to a fiduciary duty, and courts will not stray from this rule lightly. *Nat'l Plan Adm'r, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)."To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 330.

The breach of fiduciary duty claim is based on allegations that UT owes eligible parties a fiduciary duty to allocate tax incentives in good faith, and because EE is an agent of UT, EE owes that fiduciary duty and has breached it. Dkt. 3 at 14. More specifically, Hellmuth alleges that EE breached the fiduciary duty to refrain from self-dealing, to act with integrity of the strictest kind, and the duty of fair, honest dealing, when it attempted to extort Hellmuth's tax benefits. *Id.* EE's sole objection to the claim is that the claim is based on allegedly fraudulent statements it made to UT, which do not support the claim, and Hellmuth has not pled any other factual content that allows the court to draw the reasonable inference that EE is liable for breach of fiduciary duty. Dkt. 7 at 6.

As to this claim, too, the court need not consider what the allegedly fraudulent statement was, because the court must first find a fiduciary duty before such statements are even relevant. Based on Hellmuth's logic, a fiduciary relationship must first exist between Hellmuth and UT, such that UT's duty could transfer to its agent, EE. However, Hellmuth has not pled facts to show that a fiduciary relationship existed between Hellmuth and UT.

The relationship between Hellmuth and UT is a contractual one. Hellmuth has provided the court no authority upon which to find that a formal fiduciary duty exists between Hellmuth and UT. Similarly, Hellmuth has not pled facts upon which the court can base an informal fiduciary relationship. Because Hellmuth has not plead facts that establish even the first element of its breach of fiduciary duty claim, the claim is DISMISSED.

*3. Conversion*

Under Texas law, "[t]he elements of a cause of action for conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property." *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App. Houston [14th Dist.] 2011, no pet.).

The conversion claim is based on Hellmuth's position that in Texas it has a right to receive the tax deductions in question, but EE wrongfully exercised control over those deductions by refusing to release the already-earned deduction if Hellmuth did not pay a fee to EE. Dkt. 3 at 15. EE's sole objection to the claim is that the claim is based on allegedly fraudulent statements it made to UT, which do not support the claim, and that Hellmuth has not pled any other factual content that allows the court to draw the reasonable inference that EE is liable for conversion. Dkt. 7 at 6.

As to this claim, too, the court need not consider the allegedly fraudulent statement, because the claim is not based on those statements, it is based on a claim that EE is wrongfully holding Hellmuth's tax benefit. Hellmuth has pled that it applied for and was eligible for a tax deduction for the work it performed on two contracts for UT, a benefit that it pleads it is entitled to under Texas law. Dkt 3 at 11. Further, Hellmuth has pled that Texas law entitles Hellmuth to receive

13

authorization to claim the tax deduction. Tex. Gov't Code Ann § 447.04(b-3); Dkt. 3 at 10. To the extent a tax deduction can even be considered property in a conversion claim, an issue neither party explored, Hellmuth has satisfied the first element of the claim at this point.

Hellmuth further asserts that EE, who is managing the allocation process, will not release Hellmuth's tax deduction until Hellmuth signs an agreement to pay a percentage of the tax benefit to EE. Dkt. 3 at 13. Essentially, Hellmuth is alleging that EE is controlling the tax benefit that Hellmuth already earned and will not relinquish it until Hellmuth agrees to pay fees to EE. *Id.* Though far from proving its claim, Hellmuth's pleadings satisfy the remaining elements of the claim at this time.

EE's motion to dismiss Hellmuth's conversion claim is DENIED.

*4. Business Disparagement*

The elements for a claim of business disparagement are (1) publication by the defendant of disparaging words, (2) falsity, (3) actual malice, (4) lack of privilege, and (5) special damages. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). A business disparagement claim is similar to a defamation claim, but a defamation claim focuses on protecting the personal reputation of an injured party, where a business disparagement claim focuses on protecting economic interests. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

The business disparagement claim is based on EE allegedly publishing disparaging words to Hellmuth's client, UT. Dkt. 3 at 15. Hellmuth claims the words were false and published with malice and without privilege, which caused special damages. *Id.* Hellmuth's complaint specifically says that EE "falsely represented to [UT] that [UT] has the right to require payments in the form of 'rebates' and/or 'discounts' from third party designers/architects/contractors in order to receive the allocation necessary for the third parties to obtain a 179D federal tax deduction." Dkt. 3 at 12.

14

Hellmuth asserts that based on these statements, EE was hired to manage the tax deduction allocations and then damaged Hellmuth by withholding its tax benefit until it agreed to pay defendant EE fees. *Id.* EE's sole objection to the claim is that the claim is based on statements it made to UT, which it asserts are not false statements and are instead opinions, and therefore cannot be the basis of the claim. Dkt. 7 at 6.

At this point, Hellmuth has pled facts that go to the elements of its claim. EE's objection relating to whether the statement was actually false, or can be excused as an opinion, can be raised as a defense at a later stage in the case. It is not beyond doubt that Hellmuth can prove no set of facts in support of his claim which would entitle it to relief. *Leleux*, 178 F.3d at 754. Therefore, the motion to dismiss this claim is DENIED.

### 5. Tortious Interference with a Contract

The elements of tortious interference with a contract claim are: 1) the existence of a contract subject to interference; 2) a willful and intentional act of interference; 3) interference that is the proximate cause of plaintiff's damages; and 4) actual damages or loss. *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 784 (S.D. Tex. 2010). "Liability for intentional interference may not be based on a simple allegation that the defendant performed certain acts; instead, there must be a finding that the defendant performed certain acts with the knowledge or belief that interference with a contract would result." *Id.*

The tortious interference with a contract claim relates to EE allegedly making misrepresentations and engaging in wrongful conduct, which prevented Hellmuth from realizing the full intended benefit of its contracts with UT. Other than generally objecting that Hellmuth has not plead sufficient facts to support any of the claims, EE does not address this claim. Hellmuth has pled that it had two contracts with UT, EE interfered with the benefits that flowed from the contract by

inserting itself into the tax deduction benefit process, and lessened the benefit Hellmuth received by requiring Hellmuth to pay EE to release its deduction. Dkt. 3 at 3, 5–7. Hellmuth has plead sufficient facts at this time to state a claim that is plausible. The motion to dismiss this claim is DENIED.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss under Rule 12(b)(7) is DENIED; defendants' motion to dismiss under Rule 12(b)(6) is GRANTED IN PART AND DENIED IN PART. The fraud and breach of fiduciary duty claims are DISMISSED.

Signed at Houston, Texas on July 8, 2015.

_____
Gray H. Miller
United States District Judge