UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELLMUTH, OBATA & KASSABAUM, L.P., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2945 |
| | § | |
| EFFICIENCY ENERGY, L.L.C. *and* | § | |
| WILLIAM VOLKER, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court are (1) plaintiff Hellmuth, Obata & Kassabaum, L.P.'s ("HOK") motion for summary judgment on defendants' counterclaims (Dkt. 20); (2) defendants Efficiency Energy, L.L.C. ("EE") and William Volker's ("Volker") (collectively, "Defendants") motion for summary judgment (Dkt. 21); and (3) HOK's motion to strike Defendants' expert Julio Gonzalez (Dkt. 22). After considering the motions, responses, replies, and applicable law, the court is of the opinion that HOK's motion for summary judgment (Dkt. 20) should be GRANTED IN PART and DENIED IN PART; Defendants' motion for summary judgment (Dkt. 21) should be GRANTED; and HOK's motion to strike (Dkt. 22) should be DENIED. The court defers ruling on part of HOK's motion for summary judgment (Dkt. 20), pending supplemental briefing on Defendants' business disparagement and defamation counterclaims.

### I. BACKGROUND

This case concerns the allocation of a tax deduction provided by section 179D of the Internal Revenue Code. *See* I.R.C. § 179D. Section 179D creates a tax deduction in favor of the owner of a commercial building that is placed in service during the taxable year and is certified as "energy

efficient." *Id.* When the energy efficient commercial building is installed on property owned by a government entity, the deduction may be allocated to the person primarily responsible for designing the building, rather than to the owner of the building. *Id.* § 179D(d)(4). Before claiming the section 179D deduction, the designer must first obtain a written allocation of the section 179D deduction from the government entity. I.R.S. Notice 2008-40, 2008-1 C.B. 725.

EE is a consulting firm that specializes in coordinating tax incentives resulting from a government entity's construction of energy efficient buildings. Dkt. 21 at 1. In early 2011, employees of the Texas A&M University System introduced representatives of EE to representatives of the University of Texas at Austin ("UT"). *Id.* at 5. EE informed UT of section 179D and the opportunity for UT to "receive value" in exchange for the tax incentives generated by UT's energy efficient projects. *Id.* According to EE, a government entity can receive value by requesting a rebate of the contract price paid to the third party designer in exchange for allocating the section 179D tax deduction to that designer. *Id.*; *see also* Dkt. 3 at 12.

Around February 8, 2011, UT issued a "Request for Qualifications for Energy Policy Act Coordinator" to the public, seeking a firm to manage its efforts with respect to section 179D tax deductions. Dkt. 21 at 6. EE submitted a response to this request and subsequently entered into a contract with UT (the "EPAC") around April 11, 2011. *Id.* Under the EPAC, EE provides coordination services to UT regarding allocation of section 179D deductions, including identifying buildings that may qualify for the section 179D deduction, valuing the potential tax benefit, and negotiating with the designer. *Id.* at 6–7.

Around June of 2011, UT identified the Dell Pediatric Institute as a project that might qualify for a tax deduction under section 179D. *Id.* at 7. UT had previously entered into a contract with Hensel Phelps Construction Co. ("Hensel Phelps") to build the Dell Pediatric Institute. *Id.* Hensel

2

Phelps had contracted with plaintiff HOK, an architecture and design firm, to serve as the architect and engineer on the project. *See* Dkt. 23, Ex. 2.

In 2014, HOK requested an allocation letter from UT for the section 179D tax deduction associated with the Dell Pediatric Institute project. Dkt. 20 at 5. HOK's agent was directed to Defendants EE and Volker, EE's president, to negotiate the issuance of the allocation letter. *Id.* Defendants requested that HOK pay value in exchange for the allocation letter. *Id.*

HOK discussed Defendants' demand with Alliantgroup, LP ("Alliant"), a tax consulting firm that provides services to architects and other entities who qualify as "designers" under section 179D. Dkt. 24 at 3–4; Dkt. 24, Ex. F at 5–7. In response to Defendants' demand, Alliant drafted a letter on HOK's behalf (the "HOK letter"). Dkt. 24, Ex. F at 13–17. The HOK letter was revised by HOK's legal department and signed by HOK's Chief Financial Officer. *Id.* In August of 2014, Alliant sent Volker an email with the HOK letter attached. Dkt. 24 at 4. Among other things, the HOK letter stated that the rebate requested by Volker "would most likely constitute an illegal kickback in violation of state and federal law." Dkt. 24, Ex. E. The letter asked Volker to withdraw the request for a rebate and direct UT to issue the allocation letter. *Id.* EE forwarded the HOK letter to UT. Dkt. 24 at 4. Defendants sought additional information from HOK regarding the law supporting its illegal kickback allegations. *Id.* at 5.

Alliant advised HOK that it would likely need to pursue legal action to obtain the allocation letter without paying a rebate to UT. Dkt. 24, Ex. F at 7–9. On September 22, 2014, HOK filed this lawsuit in state court and brought claims for fraud, breach of fiduciary duty, conversion, business disparagement, and tortious interference with contract.[1] Dkt. 3. On October 16, 2014, Defendants

---

[1] HOK's original complaint raised these claims regarding both the Dell Pediatric Institute project and the Science and Engineering Core Facilities Upgrade project at the University of

removed the case to this court. Dkt. 1. In their answer, Defendants counterclaimed for declaratory judgment, business disparagement, defamation, and tortious interference with contract. Dkt. 16. On July 8, 2015, the court dismissed HOK's claims for fraud and breach of fiduciary duty. Dkt. 19.

HOK now moves for summary judgment of Defendants' counterclaims and moves to strike Defendants' expert Julio Gonzalez. Dkts. 20, 22. Defendants also move for summary judgment, seeking dismissal of HOK's remaining claims. Dkt. 21.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

In cases where federal subject matter jurisdiction is based on diversity, state law governs substantive matters while federal law governs procedure. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003). Under the Federal Rules of Civil Procedure, a court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

---

Texas at El Paso. Dkt. 3 at 11. HOK now concedes that the Science and Engineering Core Facilities Upgrade project is not subject to this litigation. Dkt. 23 at 7 n.1.

**B.     HOK's Motion for Summary Judgment of Defendants' Counterclaims**

Defendants bring counterclaims for (1) declaratory judgment, (2) tortious interference with contract, (3) business disparagement, and (4) defamation. Dkt. 16. HOK moves for summary judgment on all counterclaims. Dkt. 20. The court will address each counterclaim in turn.

**1.     Declaratory Judgment**

**i.     Parties' Arguments**

Defendants seek a declaratory judgment that the EPAC is valid and creates obligations that Defendants have a legal right to perform. Dkt. 16 at 15. Further, Defendants ask the court to declare that, under the EPAC, UT retains the right to determine whether to allocate section 179D deductions. *Id.* HOK argues that the court cannot declare rights pursuant to a contract between EE and UT because UT is not a party to this lawsuit; therefore, no justiciable controversy exists. Dkt. 20 at 6–7. In response, Defendants argue that a court may declare the rights of any interested party and that the "controversy" at issue in this case is HOK's interference with EE's performance of its contractual obligations to UT. Dkt. 24 at 12–13.

**ii.     Analysis**

In ruling on a request for declaratory judgment, this court applies the federal Declaratory Judgment Act. *See Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 555 (S.D. Tex. 2015) (Harmon, J.) (holding that the federal Declaratory Judgment Act is a procedural vehicle and therefore applies in a case removed to federal court). Under the Declaratory Judgment Act, a court "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2012).

In analyzing whether to decide or dismiss a declaratory judgment suit, a federal district court must first determine whether the declaratory judgment action is justiciable. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387–88 (5th Cir. 2003). The justiciability inquiry typically turns on whether there is an "actual controversy" between the parties to the action. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *see also* 28 U.S.C. § 2201 (limiting the declaratory judgment remedy to "a case of actual controversy"). A court must find that an actual controversy exists in order to exercise subject matter jurisdiction. *Orix*, 212 F.3d at 895. "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941). A justiciable controversy "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional, or based upon the possibility of a factual situation that may never develop." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967). The actual controversy requirement prevents the declaratory judgment procedure from becoming a medium for securing an advisory opinion. *Coffman v. Breeze Corp.*, 323 U.S. 316, 324, 65 S. Ct. 298 (1945). Where no actual controversy exists, a declaratory judgment action is not ripe for adjudication. *Orix*, 212 F.3d at 896.

The court agrees with HOK that Defendants' request for declaratory judgment does not present a justiciable controversy. Defendants ask the court to declare that a valid contract exists between EE and UT and that UT retains the power to allocate section 179D deductions under the EPAC. Dkt. 16 at 15. However, UT is not a party to this case. Therefore, the requested declaratory judgment would purport to establish that EE and UT have valid contractual obligations to each other, yet the judgment would not actually bind UT. As a result, any declaration would fail to create

reciprocal obligations between EE and UT. Similarly, a declaration issued in UT's absence regarding what rights UT retains under the EPAC would be ineffective to establish those rights. Therefore, the requested declaratory judgment would be purely advisory in nature. *See Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330 (1975) (holding that a federal court does not have the power to decide a question that cannot affect the rights of the litigants before the court). Defendants have cited no authority to suggest that the court may issue a declaration effectively binding an absent party to a contract.

Defendants cite the Supreme Court's opinion in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 136, 127 S. Ct. 764 (2007), for the proposition that a court "may declare the rights and other legal relations of any interested party." Dkt. 24 at 12. Defendants take the position that UT's presence is not required because Defendants are an "interested party" with respect to the contract and therefore have the right to bring an action for declaratory judgment. *Id.* This argument is non-responsive to the "actual controversy" issue raised by HOK. Both *MedImmune* and the Declaratory Judgment Act state that "*[i]n a case of actual controversy* within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune*, 549 U.S. at 126 (emphasis added)(quoting 28 U.S.C. § 2201(a)). The plain language of the text makes the existence of an "actual controversy" a prerequisite to bringing a declaratory judgment action. This requirement is separate and antecedent to the requirement that the plaintiff be an "interested party" with respect to the subject of the litigation. The court assumes that Defendants have a cognizable interest in the EPAC and that Defendants, in general, have standing to bring a declaratory judgment action with respect to the EPAC. HOK does not dispute this point. HOK argues that, as this case has been presented to the court, there is no justiciable controversy with respect to the subject of the declaratory

7

judgment action. The court agrees. Therefore, HOK's motion for summary judgment on Defendants' declaratory judgment counterclaim is GRANTED, and this counterclaim is DISMISSED WITHOUT PREJUDICE.

### 2. Tortious Interference with Contract

#### i. Parties' Arguments

Defendants claim that HOK willfully and intentionally interfered with the EPAC "by threatening baseless legal action against EE and unjustifiably accusing UT and EE of requesting illegal kickbacks." Dkt. 16 at 16. Defendants allege that this interference deprived them of the benefit of the EPAC and caused lost profits, reputational injury, and mental anguish. *Id.* HOK argues that Defendants cannot identify any action which would amount to interference with the EPAC. Dkt. 20 at 7–9. Further, HOK asserts that Defendants cannot identify any damages because they have suffered no monetary loss, and the EPAC has not been voided or terminated. *Id.* at 9. In response, Defendants argue that both HOK's issuance of the HOK letter and the filing of this lawsuit constitute intentional interference with the EPAC. Dkt. 24 at 11. Further, Defendants argue that a tortious interference claim under Texas law does not require that the contractual relationship be terminated; rather, Texas law requires only that the plaintiff prove the alleged interference made performance of the contract more difficult. *Id.* at 10–11. In reply, HOK argues that the HOK letter was sent in a good faith attempt to negotiate the issuance of the allocation letter. Dkt. 27 at 5.

#### ii. Analysis

A party alleging tortious interference with contract must prove "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

Defendants have alleged two acts of interference: the filing of this lawsuit and HOK's sending of the HOK letter. Dkt. 24 at 11. HOK has not presented any legal arguments as to why these actions cannot support a tortious interference claim. In its briefing, HOK assumes, without explanation, that this lawsuit cannot constitute interference. *See* Dkt. 20 at 8. However, the filing of a lawsuit may, in some circumstances, serve as the basis for a tortious interference with contract claim. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1269 & n.12 (5th Cir. 1991) (rejecting the argument that Texas law provides an unqualified privilege to file a lawsuit).

With respect to the HOK letter, HOK argues that it sent the letter in good faith. Dkt. 27 at 5. However, even assuming HOK acted in good faith, HOK has not offered any legal theory to explain why its good faith warrants dismissal of Defendants' counterclaim. Defendants are not required to show that HOK acted in bad faith to sustain their counterclaim. *See Clements v. Withers*, 437 S.W.2d 818, 822 (Tex. 1969) (holding that a plaintiff in a tortious interference with contract claim need not show that the defendant acted with malice or a purpose to injure). HOK's good faith could have been relevant to a justification defense. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210–11 (Tex. 1996) (holding that a party's mistaken claim to a colorable legal right may support a justification defense to a tortious interference claim where the claim was made in good faith). However, justification is an affirmative defense upon which HOK would bear the burden of pleading and proof. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). Here, HOK has not pled a justification defense and could not rely on it now. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (noting that the Federal Rules require an affirmative defense to be specifically pled and that failure to plead constitutes a waiver).

Finally, HOK argues that Defendants' tortious interference counterclaim must fail because Defendants have not experienced any monetary loss, and the EPAC has not been terminated. Dkt. 20

at 7–9. Defendants correctly point out, however, that a contract need not be terminated to support damages for tortious interference. *See Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied) ("Contractual interference encompasses actual inducement or procurement of a contract breach and all other invasions of contractual relations. Accordingly, such interference includes any act which retards, makes more difficult, or prevents performance."); *see also Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 845 n.14 (N.D. Tex. 2011) (collecting cases stating that Texas law does require proof of actual breach of contract to support a tortious interference claim). Volker provided affidavit testimony that EE has incurred and continues to incur significant costs to protect EE's business reputation and contractual relationship with UT as a result of the HOK letter and that the HOK letter has made it more burdensome for EE to provide its services. Dkt. 24, Ex. G ¶¶ 6–11. This affidavit testimony is sufficient to create an issue of material fact for trial. *See C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (collecting cases holding that an affidavit based on personal knowledge and containing statements of fact suffices to create a fact issue to defeat summary judgment, even if the affidavit is arguably self-serving). Here, the affidavit is based on Volker's first-hand knowledge as the president of EE. Further, Volker's statements are uncontradicted by the record, as HOK has introduced no evidence to the contrary.

The court finds that HOK has advanced no grounds on which the court may grant summary judgment. Therefore, HOK's motion for summary judgment is DENIED with respect to Defendants' tortious interference with contract counterclaim.

    **3.**    **Business Disparagement and Defamation**

Defendants bring a counterclaim for business disparagement and allege that HOK published disparaging words affecting Defendants' economic interests, including the accusation that EE's

business consists of requesting illegal kickbacks. Dkt. 16 at 16–17. Defendants also bring a counterclaim for defamation based on the same illegal kickback allegations. *Id.* at 17–18. These statements were allegedly published to representatives of UT and Texas A&M. Dkt. 24 at 6. HOK seeks summary judgment on both counterclaims. Dkt. 20.

A claim for business disparagement is similar to a defamation action. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). However, a defamation action protects the injured party's personal reputation, whereas a business disparagement action protects economic interests. *Id.* Both causes of action require that the statements at issue be defamatory. *See Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 427 (Tex. App.—Waco 1997, writ denied) ("Non-defamatory statements will not support a claim for business disparagement." (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987))). A defamatory statement must be a false statement of fact. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). A statement of opinion cannot be defamatory. *See id.* ("All assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution."); *see also Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Among other things, a defamatory statement must be sufficiently factual to be susceptible of being proved objectively true or false, as contrasted from a purely subjective assertion.").

In this case, neither party briefed whether the statements supporting Defendants' business disparagement and defamation counterclaims constitute protected statements of opinion or actionable statements of fact. This issue is a threshold question of law that the court must answer. *See Carr*, 776 S.W.2d at 570 ("[W]hether the publication is a protected expression of opinion or an actionable statement of fact is a question of law for the court."). Therefore, the court requests that the parties submit supplemental briefing regarding whether the statements at issue in Defendants' counterclaims

11

for business disparagement and defamation are actionable statements of fact or protected statements of opinion. The parties are ORDERED to submit their supplemental briefs within fourteen (14) days of the date of this order. These briefs should be limited to twenty-five (25) pages. Each party may file a response to the opposing party's supplemental brief within seven (7) days of its filing. Responses should be limited to ten (10) pages. The parties are not to submit reply briefs.

**B.      Defendants' Motion for Summary Judgment**

HOK's remaining claims are (1) conversion, (2) business disparagement, and (3) tortious interference with contract. Dkt. 3 at 14–16. Defendants move for summary judgment on all claims. Dkt. 21. The court will address each claim in turn.

  **1.      Conversion**

    **i.      Parties' Arguments**

HOK alleges that Defendants are liable for conversion because Defendants, by demanding that HOK pay a rebate to UT, wrongfully exercised dominion over the tax deduction allocation letter belonging to HOK. Dkt. 3 at 14–15. Defendants argue that HOK cannot sustain a conversion claim because HOK did not have the immediate right to possession of the tax incentive. Dkt. 21 at 9. Defendants assert that HOK did not obtain the required energy efficient certification on the Dell Pediatric Institute project or submit the appropriate documentation to UT that would allow UT to issue the allocation letter. *Id.* at 9–10. Further, Defendants argue that they did not exert control over HOK's property because only UT has the authority to issue allocation letters, and UT did not delegate that authority to Defendants. *Id.* at 10–11. In response, HOK argues that it is the only designer eligible to receive the allocation letter, and it has done everything legally necessary to be entitled to immediate possession of the letter. Dkt. 23 at 10–11. Further, HOK argues that Defendants exercised control over the allocation letter through EE's contractual relationship with

UT. *Id.* at 11–12. In reply, Defendants argue that HOK has presented no evidence that Defendants exercised control over any of HOK's property. Dkt. 25 at 3–4.

### ii. Analysis

Conversion is "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971) (citations omitted). The plaintiff in a conversion claim must prove that

> (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.

*Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). "Texas caselaw prohibits conversion claims by parties without an immediate right to possession of the allegedly converted property." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 382 (5th Cir. 2012).

Here, there is a dispute over whether HOK was entitled to immediate possession of the allocation letter. Under section 179D, the "energy efficient commercial building property" must be certified as energy efficient to be eligible for a tax deduction. I.R.C. §179D(c)(1)(D). When the HOK letter was sent to Volker, HOK enclosed proposed allocation letters which acknowledged that the energy efficient certification had not been completed on the Dell Pediatric Institute project. Dkt. 21, Ex C. ("We acknowledge that at the time of signing, the Building has not yet been certified as meeting the energy efficiency requirements of Sec. 179D."). UT's procedure was to allocate section 179D deductions only after certifications were completed on the property and after the designer submitted documentation to UT. Dkt. 21, Ex. A ¶¶ 37–38. Defendants have submitted

13

affidavits from both Volker and a former employee of UT stating that HOK did not provide any documentation or certification to UT. *Id.* ¶ 35; Dkt. 21, Ex. B ¶¶ 55, 60, 68. HOK has submitted no evidence to rebut the statements in these affidavits. HOK has simply made the unsupported statement that it satisfied all requirements necessary to be entitled to the allocation letter. Dkt. 23 at 11. HOK has presented no evidence that it was entitled to immediate possession of the allocation letter at the time of the alleged conversion. Therefore, Defendants' motion for summary judgment on HOK's conversion claim is GRANTED.

### 2. Business Disparagement

#### i. Parties' Arguments

HOK claims that Defendants are liable for business disparagement because they published the false information that public entities can demand payment in exchange for a tax deduction allocation letter. Dkt. 3 at 9; Dkt. 23 at 13. Defendants argue that HOK cannot maintain a business disparagement claim based on statements that say nothing about HOK or HOK's reputation. Dkt. 21 at 13. In response, HOK argues that Defendants' refusal to provide the allocation letter without payment of a rebate constitutes disparaging words that harmed HOK's economic interests, and Defendants' statements were not privileged. Dkt. 23 at 13–15.

#### ii. Analysis

A plaintiff in a business disparagement action "must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc.*, 124 S.W.3d at 170 (citing *Hurlbut*, 749 S.W.2d at 766). The first prong plainly requires that the published information be about the plaintiff. *See Fluor Enterprises, Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 434 (Tex. App.—Beaumont 2008, pet. denied) (holding that false statements cannot support a business disparagement action where the

14

statements are not directed at the plaintiff). Whether the allegedly defamatory statements reference the plaintiff is a question of law. *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Here, HOK has produced no evidence of any statements made by Defendants about HOK. The basis of HOK's business disparagement claim is Defendants' general policy statement that a public entity may request a rebate in exchange for an allocation letter. The court agrees with Defendants that this statement merely reflects Defendants' opinions about a public entity's legal rights and says nothing about HOK. The mere fact that this policy was applied in HOK's case does not change this result—the policy is equally applicable to any other designer seeking an allocation letter. *See id.* ("The false statement must point to the plaintiff and no one else."). The court finds that Defendants have published no actionable disparaging statement about HOK. Therefore, Defendants' motion for summary judgment on HOK's business disparagement claim is GRANTED.

### 3. Tortious Interference with Contract

#### i. Parties' Arguments

HOK claims that Defendants are liable for tortious interference with contract because Defendants interfered in HOK's contract with UT and prevented HOK from realizing the full benefit of the contract. Dkt. 3 at 15–16. Defendants argue that HOK has no contract with UT. Dkt. 21 at 14. Further, Defendants note that HOK's contract with Hensel Phelps did not include any discussion of benefits under section 179D. *Id.* at 15. In response, HOK argues that the contract to construct the Dell Pediatric Institute encompasses three documents which place obligations on both UT and HOK; therefore, there is effectively a contract between UT and HOK. Dkt. 23 at 15. HOK asserts that Defendants' demand of a rebate in exchange for issuance of the allocation letter interfered with this contractual relationship. *Id.* at 16–17.

### ii. Analysis

A party alleging tortious interference with contract must prove "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *ACS Inv'rs, Inc.*, 943 S.W.2d at 430.

HOK has failed to establish that a contract subject to interference exists. The evidence establishes that HOK's only contractual relationship is with Hensel Phelps, and HOK has not alleged any interference with that relationship. *See* Dkt. 23, Ex. 2. HOK has no contractual relationship with UT. "A cause of action for tortious interference will not lie in the absence of a contract." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied) (citation omitted).

HOK argues that it effectively has a contractual relationship with UT because its contract with Hensel Phelps is part of a group of contracts related to UT's Dell Pediatric Institute project. Dkt. 23 at 15. This argument is unpersuasive. HOK has provided no authority to suggest that the court may imply a contractual relationship between UT and HOK merely because both are parties to separate contracts related to the same project.

Furthermore, HOK concedes that no contractual clause exists with respect to the allocation of the section 179D tax deduction for the Dell Pediatric Institute project. *Id.* Therefore, HOK cannot establish damages because the alleged interference has not deprived HOK of any benefit contemplated by a contract. *See Brewer & Pritchard, P.C. v. AMKO Res. Int'l, LLC*, No. 14-13-00113-CV, 2014 WL 3512836, at *3 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) (noting that damages in a tortious interference claim are those that provide the plaintiff with

the "benefit of the bargain" under the contract (citing *Am. Nat'l Petrol. Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990))).

Accordingly, Defendants' motion for summary judgment on HOK's tortious interference with contract claim is GRANTED.

### III. MOTION TO STRIKE

**A.     Background**

On May 15, 2015, Defendants provided HOK with their expert disclosures and designated Julio Gonzalez of Engineered Tax Services as a non-retained expert under Federal Rule of Civil Procedure 26(a)(2)(C). Dkt. 22, Ex. A. HOK's counsel contacted Dawn Alba, general counsel of Engineered Tax Services, stating that he had prepared a subpoena for Gonzalez but would drop the subpoena upon confirmation that Gonzalez would not testify at trial. Dkt. 22, Ex. B. Alba responded that it would be "nearly impossible" either to schedule a deposition for Gonzalez or for him to be ready to testify at trial at an undetermined time, and she "decline[d] to have Mr. Gonzalez testify." *Id.* Discovery closed on June 30, 2015. Dkt. 15.

**B.     Parties' Arguments**

HOK moves to strike Gonzalez. Dkt. 22. HOK argues that Defendants failed to produce Gonzalez for deposition before the close of discovery; therefore, the court should strike Gonzalez under Federal Rule of Civil Procedure 37. *Id.* at 4. HOK emphasizes that Alba refused to present Gonzalez for deposition. *Id.*

In response, Defendants argue that HOK had six weeks to take Gonzalez's written or oral deposition but failed to do so. Dkt. 26 at 2. Defendants argue that HOK's failure to issue a subpoena for Gonzalez does not equate to a violation of the rules on their part. *Id.* Further, Defendants make the uncontroverted assertions that (1) they had no knowledge of HOK's

17

communications with Alba until the filing of this motion and (2) HOK noticed a deposition for Gonzalez on June 9, 2015 but subsequently cancelled the deposition without explanation. *Id.*

**C.     Analysis**

The court finds that Defendants have not failed to comply with a discovery order in any way that would justify striking Gonzalez under Rule 37. HOK had adequate time to depose Gonzalez before the discovery deadline. HOK was responsible for sending a notice of deposition, serving a subpoena, or seeking court intervention if necessary. *See Hilliard v. Tyson Foods, Inc.*, No. 10-CV-2388, 2012 WL 4829384, at *2 (S.D. Tex. Oct. 10, 2012) (Werlein, J.) (holding that the party seeking to depose the witness has the obligation to act to obtain the deposition, and declining to strike an expert where the party seeking to depose the expert did not file a notice, serve a subpoena, or ask the court to compel the expert to appear for a deposition); *see also Rushing v. Bd. of Supervisors of the Univ. of La. Sys. (Se. La. Univ.)*, No. 06-CV-623, 2008 WL 4330186, at *2 n.13 (M.D. La. Sept. 15, 2008) (holding that, where reasonable attempts to schedule a deposition fail, "counsel desiring to depose a witness must simply schedule the deposition and serve a notice, and a subpoena when required"). HOK utilized none of these methods to obtain Gonzalez's deposition. The court declines to sanction Defendants where (1) HOK did not employ any of the legal avenues available to obtain Gonzalez's deposition, (2) Defendants' counsel was unaware that HOK was attempting to schedule Gonzalez's deposition through Alba, and (3) HOK itself cancelled Gonzalez's only scheduled deposition. The single case cited by HOK is inapposite. *See Lopez v. Countrywide Mortg.*, No. 2:06-CV-116, 2009 WL 139484, at *3-4 (S.D. Tex. Jan. 21, 2009) (striking plaintiff's expert witness where plaintiff engaged in a "repetitive pattern of unjustified delay," including scheduling the witness's deposition on a day he knew that the witness was unavailable and unwilling to be deposed).

The court finds no basis on which to strike Gonzalez. Therefore, HOK's motion to strike (Dkt. 22) is DENIED.

## IV. CONCLUSION

Defendants' motion for summary judgment (Dkt. 21) is GRANTED. HOK's claims are DISMISSED WITH PREJUDICE. HOK's motion to strike (Dkt. 22) is DENIED.

HOK's motion for summary judgment of Defendants' counterclaims (Dkt. 20) is GRANTED IN PART and DENIED IN PART. HOK's motion for summary judgment is GRANTED with respect to Defendants' counterclaim for declaratory judgment, and Defendants' counterclaim for declaratory judgment is DISMISSED WITHOUT PREJUDICE. HOK's motion for summary judgment is DENIED with respect to Defendants' tortious interference with contract counterclaim. The court defers ruling on HOK's motion for summary judgment as it applies to Defendants' counterclaims for business disparagement and defamation, pending supplemental briefing on these counterclaims. The parties are ORDERED to submit supplemental briefing regarding whether Defendants' counterclaims for business disparagement and defamation allege actionable statements of fact or protected statements of opinion within fourteen (14) days of the date of this order. Supplemental briefs should not exceed twenty-five (25) pages. Each party may respond to the opposing party's supplemental brief within seven (7) days of its filing. Response briefs should be limited to ten (10) pages. The parties are not to submit reply briefs.

Signed at Houston, Texas on January 14, 2016.

_____
Gray H. Miller
United States District Judge