# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| HELLMUTH, OBATA & KASSABAUM, L.P., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2945 |
| | § | |
| EFFICIENCY ENERGY, L.L.C. *and* | § | |
| WILLIAM VOLKER, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Hellmuth, Obata & Kassabaum, L.P.'s ("HOK") motion for summary judgment on defendants' counterclaims for defamation and business disparagement. Dkt. 20. After considering the motion, response, reply, supplemental briefing, and applicable law, the court is of the opinion that the motion should GRANTED as it applies to those counterclaims. This opinion supplements the court's January 14, 2016, order, in which the court ruled on the remainder of HOK's motion. *See* Dkt. 28.

## I. BACKGROUND

HOK served as the architect for the construction of the Dell Pediatric Research Institute, a project of the University of Texas at Austin ("UT"). Dkt. 20 at 4. HOK maintains that, due to its work on the Dell Pediatric Research Institute, it is entitled to a tax deduction provided by section 179D of the Internal Revenue Code. *Id.* at 4–5. When HOK contacted UT to request an allocation of that tax deduction, UT directed HOK to Efficiency Energy, L.L.C. ("EE") and EE's president, William Volker ("Volker") (collectively, "Defendants"). *Id.* at 5. UT had hired EE to assist in coordinating tax incentives associated with the construction of energy efficient properties. Dkt. 24

at 2–3.  When HOK contacted Defendants, Defendants requested that HOK pay monetary value in exchange for the allocation of the tax deduction.  Dkt. 20 at 5.

HOK discussed Defendants' demand with Alliantgroup, LP ("Alliant"), a tax consulting firm that provides services to architects and other designers.  Dkt. 24 at 3–4; Dkt. 24, Ex. F at 5–7.  In response to Defendants' demand, Alliant drafted a letter on HOK's behalf (the "HOK letter").  Dkt. 24, Ex. F at 13–17.  The HOK letter was revised by HOK's legal department and signed by HOK's Chief Financial Officer.  *Id.*  In August of 2014, Alliant sent Volker an email with the HOK letter attached.  Dkt. 24 at 4.  Among other things, the HOK letter stated that the "rebate" requested by Volker "would most likely constitute an illegal kickback in violation of state and federal law."  Dkt. 24, Ex. E.  The letter asked Volker to withdraw the request for a rebate and direct UT to issue the allocation letter.  *Id.*  EE forwarded the HOK letter to UT.  Dkt. 24 at 4.  In September of 2014, Alliant repeated the statements in the HOK letter both verbally and in writing to individuals from the Texas A&M System.  Dkt. 24, Ex. G at 2.

On September 22, 2014, HOK filed this lawsuit in response to the dispute over the tax deduction.  Dkt. 3.  HOK brought claims for fraud, breach of fiduciary duty, conversion, business disparagement, and tortious interference with contract.  *Id.*  Defendants counterclaimed for declaratory judgment, business disparagement, defamation, and tortious interference with contract.  Dkt. 16.  The court has since dismissed all of HOK's claims.  *See* Dkts. 19, 28.

On July 31, 2015, HOK filed a motion for summary judgment of Defendants' counterclaims.  Dkt. 20.  On January 14, 2016, the court issued an order ruling in part on HOK's motion for summary judgment.  Dkt. 28.  The court (1) granted HOK's motion with respect to Defendants' declaratory judgment counterclaim and (2) denied HOK's motion with respect to Defendants' tortious interference with contract counterclaim.  *Id.*  The court deferred ruling on the portion of

2

HOK's motion that addressed Defendants' defamation and business disparagement counterclaims. *Id.* at 10–12. The court requested supplemental briefing before making a ruling with respect to those counterclaims. *Id.* The parties have now submitted their supplemental briefs. *See* Dkts. 29–32.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

### A.   Business Disparagement and Defamation Framework

A claim for business disparagement is similar to a defamation action. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). However, a defamation action protects the injured party's personal reputation, whereas a business disparagement action protects economic interests. *Id.* Both causes of action require that the statements at issue be defamatory. *See Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 427 (Tex. App.—Waco 1997, writ denied) ("Non-defamatory statements will not support a claim for business disparagement." (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987))).

3

A defamatory statement must be a false statement of fact, as opposed to a purely subjective assertion or opinion. *Vecchio v. Jones*, No. 01-12-00442-CV, 2013 WL 3467195, at *7 (Tex. App.—Houston [1st Dist.] July 9, 2013, no pet.) (mem. op.); *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.). However, the law does not impose an "artificial dichotomy" between "fact" and "opinion." *Bentley v. Bunton*, 94 S.W.3d 561, 579–81 (Tex. 2002); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S. Ct. 2695 (1990) (holding that there is no "wholesale defamation exemption for anything that might be labeled 'opinion'"). Rather, in determining whether a statement is an actionable statement of fact, the court focuses on "a statement's verifiability and the entire context in which it was made." *Bentley*, 94 S.W.3d at 581. In other words, "a defamatory statement must be sufficiently factual to be susceptible of being proved objectively true or false." *Thomas-Smith*, 238 S.W.3d at 507; *see also Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.) ("To be actionable, a statement must assert an objectively verifiable fact." (citations omitted)). Therefore, a statement of opinion "can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied). On the other hand, a statement of opinion is not actionable where it cannot be objectively verified. *Gateway Logistics Grp., Inc. v. Dangerous Goods Mgmt. Austl. Pty., Ltd.*, No. 05-2742, 2008 WL 1883914, at *10 (S.D. Tex. Apr. 25, 2008) (Rosenthal, J.). Whether a publication is an actionable statement of fact is a question of law for the court. *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Local 450*, 8 F. Supp. 3d 896, 912 (S.D. Tex. 2014) (Harmon, J.); *Main*, 348 S.W.3d at 389.

4

B.     **Application**

Defendants' counterclaims for business disparagement and defamation are based on statements made by HOK and Alliant indicating that Defendants' rebate request constitutes an illegal kickback in violation of state and federal law.  Dkt. 16 at 16–17; Dkt. 29 at 4–5.  Defendants claim that they suffered lost profits and other damages as a result of the communication of these statements to third parties.  Dkt. 16 at 16–17.

In support of its motion for summary judgment, HOK argues that its statement that the rebate request would "most likely" constitute an illegal kickback is not a verifiable fact because (1) the context shows that it intended to express concern over Defendants' demand for a rebate and (2) the statement raises a legal question about the possibility of making a rebate payment, a condition which had not happened at the time the statement was made.  Dkt. 30 at 5.  HOK notes that there has been no court ruling on the propriety of requiring a designer to pay a rebate in exchange for a tax deduction.  *Id.* at 12–13.  Further, HOK points out that Congressman Charles Boustany and several experts have raised concerns that the practice constitutes an illegal kickback.  *Id.* at 9–12.  HOK maintains that the authorities cited by Defendants, which take the position that the rebate request is legal, have no power to make a determination about the legality of the practice.  Dkt. 31 at 8.

In response, Defendants argue that HOK's statement that Defendants requested illegal kickbacks can be objectively verified and proven false.  Dkt. 29 at 5.  Defendants note that the U.S. General Services Administration, the American Institute of Architects, and Senator Jeff Bingaman have publically stated that a government entity may request a rebate in exchange for allocation of a section 179D tax deduction.  *Id.*  Additionally, UT came to the same conclusion.  *Id.*  Further, Defendants note that the IRS has never stated that the practice is prohibited.  *Id.* at 6.  Defendants argue that the context of the statements indicates that they are actionable in defamation because the

5

statements were made "for the purpose of damaging Defendants' business and obtaining a financial benefit for HOK." *Id.*  Defendants also contend that HOK has overstated the support for its claim that the rebate request constitutes an illegal kickback, noting that only one congressional representative and a "pair of blog posts" have taken that position.  Dkt. 32 at 2–3.  Finally, Defendants argue that HOK's characterization of its statements as "legal opinions" does not prevent the statements from being actionable because the facts underlying those opinions were incomplete and incorrect.  *Id.* at 4–5.

The court agrees with HOK that Defendants have not alleged a verifiable statement of fact necessary to support their counterclaims for business disparagement and defamation.  Defendants have shown, at most, that the majority of entities take the position that the rebate request is legal.  However, as HOK has pointed out, none of those entities has the authority to make that determination.  There has been no binding legal decision regarding whether a government entity may require a designer to pay a rebate in exchange for the allocation of a tax deduction.  Therefore, Defendants would have no basis to prove at trial that HOK's statement characterizing the rebate request as an illegal kickback was objectively false.

Further, the court finds that the entire context of the statements supports the conclusion that the statements are not objectively verifiable.  *See Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 687 (N.D. Tex. 2008) (noting that the determination of whether a publication is an actionable statement of fact depends on the context in which the statements were made and "a reasonable person's perception of the entire publication and not merely individual statements" (citation omitted)).  The HOK letter states that the rebate request would "most likely" constitute an illegal kickback, that it would place UT in a position it "most likely wants to avoid," and that it would put Defendants and UT "at risk" of violating applicable law.  Dkt. 24, Ex. E.  A

6

review of the entire publication indicates that HOK's statements reflect its tentative legal opinion, as opposed to a verifiable factual assertion that Defendants have engaged in illegal conduct. Defendants correctly point out that (1) an opinion may be actionable in defamation where the opinion expressly or impliedly asserts verifiable facts and (2) a defamation defendant cannot avoid liability merely by couching statements as "opinions." Dkt. 29 at 3; *see also Zimmer*, 257 S.W.3d at 509; *Bentley*, 94 S.W.3d at 583–84. Here, however, there is no real dispute between the parties over the underlying facts. Defendants do not dispute that they requested a rebate on behalf of UT; likewise, HOK does not dispute that it sent the HOK letter suggesting that the rebate request was "most likely" illegal. The only dispute between the parties is whether HOK's characterization of Defendants' rebate request as an illegal kickback is a correct statement of law. In other words, the parties disagree on how the law applies to an undisputed set of facts. The correctness of a party's opinion on an undecided legal issue, however, is not an appropriate basis for a defamation or business disparagement action. *Cf. Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App—Houston [1st Dist.]. 2005, no pet.) (explaining that, to support a defamation claim, a statement must contain false, defamatory facts, rather than mere opinions or characterizations).

This case is distinguishable from cases where accusations of illegal conduct have been found actionable. In *Bentley*, Joe Bunton learned of a criminal case pending before Judge Bascom Bentley. 94 S.W.3d at 568. The defendant in the criminal case, a man named Curbo, had been charged with robbery. *Id.* Judge Bentley placed Curbo on community supervision for five years with deferred adjudication of guilt. *Id.* Eight weeks later, Curbo was arrested for credit card abuse. *Id.* The prosecutor filed a motion to adjudicate Curbo's guilt on the robbery charge. *Id.* Judge Bentley released Curbo on his personal recognizance without ruling on the motion. *Id.* Bunton concluded that Judge Bentley's release of Curbo was improper and that Judge Bentley had failed to rule on the

7

prosecutor's motion so that he could use the threat of further proceedings against Curbo's father, who was a mayoral candidate.  *Id.*  Bunton repeated this accusation, among others, on his televised public access talk show in support of his stated belief that Judge Bentley was corrupt.  *Id.* at 569–70. In fact, Bunton's understanding of the events was incorrect and incomplete.  *Id.* at 568.  Curbo's lawyer had requested, without opposition from the prosecutor, that Curbo be released on his personal recognizance.  *Id.*  Further, the decision to release Curbo was clearly within Judge Bentley's discretion.  *Id.*  The case against Curbo had remained pending because neither the prosecutor nor Curbo's probation officer believed that Curbo, who had learning disabilities, should be incarcerated. *Id.*  As a result, neither Curbo's lawyer nor the prosecutor had requested a ruling on the motion to adjudicate.  *Id.*

Judge Bentley later sued Bunton for defamation as a result of Bunton's comments on his talk show.  *Id.* at 574.  Bunton argued that his statements were merely opinion and therefore were not capable of defamatory meaning.  *Id.* at 579.  The Texas Supreme Court rejected Bunton's argument, explaining that Bunton consistently claimed that his accusations of corruption were based on actual facts discovered from his own lengthy investigation.  *Id.* at 583.  The court emphasized Bunton's insistence that particular discrete instances, such as the Curbo case, proved that Judge Bentley was in fact corrupt.  *Id.* at 584.  The court acknowledged that, had Bunton been correct about Judge Bentley's motivations in the Curbo case, "[Judge Bentley's] conduct would undisputedly have been criminal."  *Id.* at 568.

In *Bentley*, Bunton made factual misrepresentations about Judge Bentley's conduct in the Curbo case.  By contrast, Defendants' allegations in this case do not stem from a misrepresentation of fact made by HOK—rather, Defendants essentially argue that HOK made a mistake of law in characterizing Defendants' conduct as illegal.  In *Bentley*, Bunton falsely accused Judge Bentley of

8

conduct that was undisputedly criminal.  Here, the situation is essentially the opposite: Defendants have engaged in an undisputed course of conduct, but the legality of that conduct under the law is disputed.  As stated above, however, there is no binding authority that would allow Defendants to verify that HOK's statement of the law was false.

The court finds that Defendants' business disparagement and defamation counterclaims fail as a matter of law because the statements at issue in those counterclaims cannot be objectively verified. Therefore, HOK's motion for summary judgment on Defendants' business disparagement and defamation counterclaims is GRANTED.

## IV. CONCLUSION

HOK's motion for summary judgment (Dkt. 20) is GRANTED as it applies to Defendants' defamation and business disparagement counterclaims, and those counterclaims are DISMISSED WITH PREJUDICE.  This opinion supplements the court's January 14, 2016, order, in which the court (1) granted HOK's motion for summary judgment on Defendants' declaratory judgment counterclaim and (2) denied HOK's motion for summary judgment on Defendants' tortious interference with contract counterclaim.  *See* Dkt. 28.

Signed at Houston, Texas on February 18, 2016.

Gray H. Miller
United States District Judge

9